UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| MIRANDA P. EDMONDSON and JOSHUA A. EDMONDSON, individually and on behalf of all other similarly situated, | Case No.: 1:22-CV-1745 |
| Plaintiffs, | |
| v. | Jury Trial Demanded |
| GERMAN AMERICAN BANK, | |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiffs Miranda & Joshua Edmonson, individually and on behalf of the class of persons preliminarily defined below (the "Class"), make the following allegations based upon information and belief, except as to allegations specifically pertaining to Plaintiffs, which are based on personal knowledge.

### NATURE OF THE ACTION

1.      Plaintiffs bring this action individually and on behalf of a Class of all similarly situated consumers against Defendant German American Bank ("Defendant"), arising from its routine practice of assessing multiple $38[1] fees on an item.

2.      Defendant misleadingly and deceptively misrepresents its fee practices, including in its own account contracts.

---

[1] The amount of Defendant's OD and NSF fee is significantly higher than average. Alicia Adamczyk, *Overdraft fees hit another record high this year—here's how to avoid them,* CNBC, *available at* https://www.cnbc.com/2021/10/20/overdraft-fees-hit-another-record-highheres-how-to-avoid-them.html ("Overdraft charges hit an average of $33.58 this year, a new record high and up slightly from last year's average of $33.47, according to Bankrate's 2021 Checking Account and ATM Fee Study.").

3.      This is a civil action seeking monetary damages, restitution, and declaratory and injunctive relief.

4.      As described herein, Defendant's practices violate Indiana statutory and common law, as well as the Defendant's own form contracts.

## PARTIES

5.      Plaintiffs Miranda & Joshua Edmonson are citizens of Kentucky. Plaintiffs had an account with Citizens Union Bank of Shelbyville. On or around January 1, 2022, Defendant acquired the assets and liabilities of Citizens Union Bank of Shelbyville.

6.      Defendant German American Bank is a citizen of Indiana and maintains its principal place of business in this District in Jasper, Dubois County, Indiana. It has approximately $5.3 billion in assets and maintains several branches throughout Indiana and Kentucky.

## JURISDICTION AND VENUE

7.      This Court has original jurisdiction over this putative class action lawsuit pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d)(2) & (6), because the aggregate sum of the claims of the members of the putative Class exceeds $5 million, exclusive of interest and costs, because Plaintiffs bring this action on behalf of a proposed Class that is comprised of over one hundred members, and because at least one of the members of the proposed Class is a citizen of a different state than Defendant.

8.      This Court has personal jurisdiction over Defendant because Defendant conducted business in and throughout the Southern District of Indiana at all times material hereto.

9.      Defendant regularly and systematically conducts business and provides retail banking services in this state and provides retail banking services to customers in this state. As such, it is subject to the jurisdiction of this Court.

2

10.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Defendant resides in this District and a substantial part of the events or omissions giving rise to Plaintiffs' claim occurred in this District. Venue is further proper pursuant to 28 U.S.C. § 1391(b)(3) because Defendant is subject to personal jurisdiction in this District.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### I.    Defendant Improperly Charges Two Or More Fees on an Item

11.    Overdraft fees and insufficient funds fees ("NSF fees") are among the primary fee generators for banks. According to a banking industry market research company, Moebs Services, in 2018 alone, banks generated an estimated $26.5 billion from overdraft fees. *Overdraft Revenue Inches Up in 2018*, https://bit.ly/3cbHNKV.

12.    Unfortunately, the customers who are assessed these fees are the most vulnerable customers.  Younger, lower-income, and non-white account holders are among those who were more likely to be assessed overdraft fees. *Overdrawn: Consumer Experiences with Overdraft*, Pew Charitable Trusts 8 (June 2014), https://bit.ly/3ksKD0I.

13.    For years, federal regulators have found the assessment of multiple fees on an item to be deceptive. As early as 2012, the Federal Deposit Insurance Corporation (the "FDIC") has expressed concern with the practice of assessing multiple fees on an item. The FDIC determined that one bank's assessment of more than one NSF Fee on the same item was a "deceptive and unfair act." *In the Matter of Higher One, Inc., Consent Order*, Consent Order, FDIC-1 1-700b, FDIC-1 1-704k, 2012 WL 7186313.

14.    In its latest issue of Consumer Compliance Supervisory Highlights, the FDIC again addressed the charging of multiple non-sufficient funds fees for transactions presented multiple times against insufficient funds in the customer's account. FDIC examiners have scrutinized this

issue in recent exams, with some exams remaining open pending resolution of the issue. *See* **Ex. B** hereto (FDIC Consumer Compliance Supervisory Highlights, Mar. 2022).

15.     In the Supervisory Highlights, the FDIC discussed potential consumer harm from this practice in terms of both deception and unfairness under the Federal Trade Commission Act Section 5's prohibition on unfair or deceptive acts or practices. The FDIC stated that the "failure to disclose material information to customers about re-presentment practices and fees" may be deceptive. *Id*. at 8.

16.     During 2021, the FDIC identified consumer harm when financial institutions charged multiple NSF fees for the re-presentment of unpaid transactions. Terms were not clearly defined and disclosure forms did not explain that the same transaction might result in multiple NSF fees if re-presented. While case-specific facts would determine whether a practice is in violation of a law or regulation, the failure to disclose material information to customers about re-presentment practices and fees may be deceptive. This practice may also be unfair if there is the likelihood of substantial injury for customers, if the injury is not reasonably avoidable, and if there is no countervailing benefit to customers or competition. For example, there is risk of unfairness if multiple fees are assessed for the same transaction in a short period of time without sufficient notice or opportunity for consumers to bring their account to a positive balance. *Id*.

17.     In its staff analysis of the issue, the American Bankers Association recommended that banks review their deposit account agreement to ensure it states clearly that a separate NSF fee will be assessed whenever the same item is resubmitted against insufficient funds. ABA also encouraged banks, if scrutinized by a regulator, to explain the significant logistical challenges with identifying items that have been resubmitted by the merchant for payment against insufficient funds. ABA is updating its staff analysis of this issue to reflect the Supervisory Highlights. *See*

ABA Banking Journal, *FDIC provides guidance on multiple NSF fees for re-presented items*, April 1, 2022, *available at* https://bankingjournal.aba.com/2022/04/fdic-provides-guidance-on-multiple-nsf-fees-for-re-presented-items/.

18.    In August 2022, the FDIC again warned that banks must re-consider the legality of the practice or risk enforcement action. *See* **Ex. A** hereto, FDIC  Supervisory Guidance on Multiple Re-Presentment NSF Fees.

19.    Seeing the writing on the wall, leading for-profit banks have recently decided to stop assessing OD and NSF Fees entirely. Hugh Son, *Capital One to Drop Overdraft Fees for All Retail Banking Customers*, NBC News (Dec. 1, 2021), https://nbcnews.to/3DKSu2R; Paul R. La Monica, *Wells Fargo ends bounced check fees*, CNN Business, https://bit.ly/3GH7XTW.

20.    In addition, the New York Attorney General recently asked other industry leading banks to end the assessment of all OD Fees by the summer of 2022. *NY Attorney General asks banks to end overdraft fees*, Elizabeth Dilts Marshall, Reuters (April 6, 2022).

21.    The New York Department of Financial Services also recently issued guidance stating that the practice of assessing multiple fees on an item is "deceptive" and it "ultimately expects Institutions will not charge more than one NSF fee per transaction, regardless of how many times that transaction is presented for payment." *See* https://www.dfs.ny.gov/industry_guidance/industry_letters/il20220712_overdraft_nsf_fees.

22.    Defendant unlawfully maximizes its already profitable fees through its deceptive and contractually-prohibited practice of charging multiple NSF fees, or an NSF fee followed by an overdraft fee, on an item.

23.    Unbeknownst to consumers, when Defendant reprocesses an electronic payment item, ACH item, or check for payment after it was initially rejected for insufficient funds,

Defendant chooses to treat it as a new and unique item that is subject to yet another fee. But Defendant's contract never states that this counterintuitive and deceptive result could be possible and, in fact, says nothing at all about how overdraft fees or NSF fees are assessed.

24.     Further, this abusive multiple fee practice is not universal in the financial services industry. Indeed, major banks like Chase—the largest consumer bank in the country—do not undertake the practice of charging more than one fee on the same item when it is reprocessed. Instead, Chase charges one fee even if an item is reprocessed for payment multiple times.

25.     Defendant, however, engages in this abusive and deceptive practice in violation of its own contract and against the reasonable expectations of its customers.

**A. The Imposition of Multiple Fees on an Item Violates Defendant's Express Promises and Representations**

26.     Plaintiffs have had a Defendant checking account at all times material hereto, which was governed by Defendant's standardized Account Agreement, attached as **Ex. C** hereto (the "Contract").

27.     The Contract allows Defendant to take certain steps when paying a check, electronic payment item, or ACH item when the accountholder does not have sufficient funds to cover it. Specifically, Defendant may (a) pay the item and charge a $38 fee; or (b) reject the item and charge a $38 fee.

28.     In contrast to the Contract, however, Defendant regularly assesses two or more $38 fees on an item.

29.     The Contract provides the general terms of Plaintiffs' relationship with Defendant, and therein Defendant makes explicit promises and representations regarding how an item will be processed, and how fees may be assessed.

30.     The Contract states that:

6

> NSF Paid Item Fee (limited to a maximum of 5 item fees
> per day. If the end of day balance is at -$0.01 to -$5.00
> no NSF fee will be assessed.): $38.00 *per item*
>
> NSF Returned Item Fee (limited to a maximum of 5 item
> fees per day. If the end of day balance is at -$0.01 to
> -$5.00 no NSF fee will be assessed.): $38.00 *per item*

**Ex. C** at 11 (emphasis added).

31.     In other words, Defendant promises to assess a "Fee" (singular) of $38.00 "per item."

32.     In breach of this promise, Defendant assesses two or three $38 NSF Return Item Fees on an item, or one or two $38 NSF Returned Item Fees followed by an $38 NSF Paid Item Fee.

***33.     This means that customers can be assessed up to $114 in fees on the same small-dollar item.***

34.     The same "item" on an account cannot conceivably become a new one each time it is rejected for payment then reprocessed, especially when—as here—Plaintiffs took no action to resubmit it.

35.     There is zero indication anywhere in the Contract that the same "item" is eligible to incur multiple fees.

36.     Even if Defendant reprocesses an instruction for payment, it is still the same "item." Its reprocessing is simply another attempt to effectuate an account holder's original order or instruction.

37.     Defendant and its members never agreed that Defendant may assess multiple fees for a single check, electronic payment item, or ACH item that was returned for insufficient funds and later reprocessed one or more times and returned again.

38.     In sum, Defendant promised that one fee would be assessed on an item, and this term must mean all iterations of the same instruction for payment. As such, Defendant breached the Contract when it charged more than one fee per item.

39.     Reasonable consumers understand any given authorization for payment to be one, singular "item," as that term is used in the Contract.

40.     Taken together, the representations and omissions identified above convey to customers that all submissions for payment of the same item will be treated as the same "item," which Defendant will either authorize (resulting in an overdraft item) or reject (resulting in a returned item) when it decides there are insufficient funds in the account. Nowhere do Defendant and its customers agree that Defendant will treat each reprocessing of a check, electronic payment item, or ACH item as a separate item, subject to additional fees.

41.     Customers reasonably understand, based on the language of the Contract, that Defendant's reprocessing of checks, electronic payment items, and ACH items are simply additional attempts to complete the original order or instruction for payment, and as such, will not trigger fees. In other words, it is always the same item.

42.     Banks and credit unions like Defendant that employ this abusive practice require their accountholders to expressly agree to it.

43.     Community Bank, NA, discloses its fee practice in its online banking agreement, in all capital letters, as follows:

> We cannot dictate whether or not (or how many times) a merchant will submit a previously presented item. **You may be charged more than one Overdraft or NSF Fee if a merchant submits a single transaction multiple times after it has been rejected or returned.**

*Overdraft and Unavailable Funds Practices Disclosure*, Community Bank N.A. 5 (Nov. 12, 2019), https://bit.ly/3uQafe7 (emphasis added).

44.     The Contract provides no such authorization, and actually promises the opposite—Defendant may charge, at most, a fee on an item.

**B. Plaintiffs' Experience**

45.     In support of Plaintiffs' claim, Plaintiffs offer examples of fees that should not have been assessed against Plaintiffs' checking account. As alleged below, Defendant: (a) reprocessed a previously declined item; and (b) charged a fee upon reprocessing.

46.     On or around April 11, 2022, Plaintiffs attempted a payment.

47.     Defendant rejected payment of that item and charged a $38 fee for doing so.

48.     Unbeknownst to Plaintiffs and without Plaintiffs' request to Defendant to reprocess the item, on or around April 12, 2022, Defendant reprocessed the same item again, paid it into overdraft and charged Plaintiffs a second $38 fee for doing so.

49.     *In sum, Defendant charged Plaintiffs $76 in fees on an item.*

50.     On or around January 11, 2022, Plaintiffs attempted a payment.

51.     Defendant rejected payment of that item and charged a $33[2] fee for doing so.

52.     Unbeknownst to Plaintiffs and without Plaintiffs' request to Defendant to reprocess the item, on or around January 18, 2022, Defendant reprocessed the same item again, rejected it again and charged Plaintiffs a second $33 fee for doing so.

53.     *In sum, Defendant charged Plaintiffs $66 in fees on an item.*

54.     Plaintiffs understood the payment to be a single item as is laid out in the Contract, capable of receiving, at most, a single fee if Defendant returned it, or a single fee if Defendant paid it.

---

[2] Citizens Union Bank charged a $33 per item fee at this time.

55.    The improper fees charged by Defendant were not errors, but rather intentional charges made by Defendant as part of its standard processing of items.

56.    Plaintiffs therefore had no duty to report the fees as errors.

57.    Moreover, any such reporting would have been futile as Defendant had made a decision to charge the fees in this specific manner to maximize profits at the expense of customers.

**C. The Imposition of Multiple Fees on an Item Breaches Defendant's Duty of Good Faith and Fair Dealing**

58.    Parties to a contract are required not only to adhere to the express conditions in the contract, but also to act in good faith when they are invested with a discretionary power over the other party. This creates an implied promise to act in accordance with the parties' reasonable expectations and means that Defendant is prohibited from exercising its discretion to enrich itself and gouge its customers. Indeed, Defendant has a duty to honor payment requests in a way that is fair to Plaintiffs and its other customers and is prohibited from exercising its discretion to pile on ever greater penalties on the depositor. Here—in the adhesion agreements Defendant foisted on Plaintiffs and its other customers—Defendant has provided itself numerous discretionary powers affecting customers' accounts. But instead of exercising that discretion in good faith and consistent with consumers' reasonable expectations, Defendant abuses that discretion to take money out of consumers' accounts without their permission and contrary to their reasonable expectations that they will not be charged multiple fees on an item.

59.    When Defendant charges multiple fees on an item, it uses its discretion to define the meaning of the Contract in a way that violates common sense and reasonable consumer expectations. Defendant uses its contractual discretion to define that term to choose a meaning that directly causes more fees.

60.    In addition, Defendant exercises its discretion in its own favor and to the prejudice of Plaintiffs and its other customers when it reprocesses an item when it knows a customer's account lacks funds and then charges additional fees on an item. Further, Defendant abuses the power it has over customers and their bank accounts and acts contrary to their reasonable expectations under the Contract. This is a breach of Defendant's duty to engage in fair dealing and to act in good faith.

61.    It was bad faith and totally outside of Plaintiffs' reasonable expectations for Defendant to use its discretion to assess two or more fees on an item.

62.    Defendant abuses its discretion and acts in bad faith by defining contract terms in an unreasonable way that violates common sense and by charging multiple fees on an item.

## CLASS ACTION ALLEGATIONS

63.    *Description of the Class*: Plaintiffs bring this action individually and on behalf of the following class of persons:

> All accountholders who, during the applicable statute of limitations, were charged multiple fees on an item on a German American Bank or Citizens Union Bank checking account.

64.    Excluded from the Class are Defendant's officers, directors, affiliates, legal representatives, employees, successors, subsidiaries, and assigns. Also excluded from the Class are any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

65.    The time period for the Class is the number of years immediately preceding the date on which this Complaint was filed as allowed by the applicable statute of limitations, going forward into the future until such time as Defendant remedies the conduct complained of herein.

66.    *Numerosity*: The members of the proposed Class are so numerous that individual joinder of all members is impracticable. The exact number and identities of the members of the proposed Class are unknown at this time and can be ascertained only through appropriate discovery. Plaintiffs estimate the number of members in each Class to be in the thousands.

67.    *Commonality and Predominance*: There are many questions of law and fact common to Plaintiffs and the Class, and those questions substantially predominate over any questions that may affect individual Class members. Common questions of law and fact include:

a.    Whether Defendant charged multiple fees on an item;

b.    Whether Defendant breached its own contract by charging multiple fees on an item;

c.    Whether Defendant breached the covenant of good faith and fair dealing;

d.    Whether Defendant's fee practices violate the Indiana Deceptive Consumer Sales Act;

e.    The proper method or methods by which to measure damages; and

f.    The declaratory and injunctive relief to which the Class is entitled.

68.    *Typicality:* Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs and all members of the Class have been similarly affected by Defendant's actions.

69.    *Adequacy of Representation*: Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel with substantial experience in prosecuting complex and consumer class action litigation. Plaintiffs and Plaintiffs' counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so.

70.    *Superiority of Class Action*: Plaintiffs and the members of the Class suffered, and will continue to suffer, harm as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the present

controversy. Individual joinder of all members of the Class is impractical. Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendant's common course of conduct. The class action device allows for unitary adjudication, judicial economy, and the fair and equitable handling of all class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the Class members.

71.    *Risk of Inconsistent or Varying Adjudication*: Class action treatment is proper, and this action should be maintained as a class action because the risks of separate actions by individual members of the Class would create a risk of: (a) inconsistent or varying adjudications with respect to individual Class members which would establish incompatible standards of conduct for Defendant as the party opposing the Class; and/or (b) adjudications with respect to individual Class members would, as a practical matter, be dispositive of the interests of other Class members not party to the adjudication or would substantially impair or impede their ability to protect their interests.

72.    *Action Generally Applicable to Class as a Whole*: Defendant, as the party opposing the Class, has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

### FIRST CLAIM FOR RELIEF
**Breach of Contract, Including Breach of the Covenant of Good Faith and Fair Dealing**
**(On Behalf of Plaintiffs and the Class)**

73.    Plaintiffs incorporate by reference the preceding paragraphs.

74.     Plaintiffs and Defendant have contracted for banking services, as embodied in Defendant's account documents.

75.     All contracts entered by Plaintiffs and the Class are identical or substantively identical because Defendant's form contracts were used uniformly.

76.     Defendant has breached the express terms of its own agreements as described herein.

77.     Under Indiana law, good faith is an element of every contract between banks and their customers because banks are inherently in a superior position to their checking account holders and, from this superior vantage point, they offer customers contracts of adhesion, often with terms not readily discernible to a layperson.

78.     Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

79.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain and abuse of a power to specify terms.

80.     Defendant abused the discretion it granted to itself when it charged multiple fees on an item.

81.     In these and other ways, Defendant violated its duty of good faith and fair dealing.

82.     Defendant willfully engaged in the foregoing conduct for the purpose of (1) gaining unwarranted contractual and legal advantages; and (2) unfairly and unconscionably maximizing fee revenue from Plaintiffs and other members of the Class.

83.     Plaintiffs and members of the Class have performed all, or substantially all, of the obligations imposed on them under the agreements.

84.     Plaintiffs and members of the Class have sustained damages as a result of Defendant's breaches of the parties' contracts and breaches of contract through violations of the covenant of good faith and fair dealing.

## SECOND CLAIM FOR RELIEF
### Violation of the Indiana Deceptive Consumer Sales Act
### (On Behalf of Plaintiffs and the Class)

85.     Plaintiffs incorporate by reference the preceding paragraphs.

86.     The purposes and policies of the Indiana Deceptive Consumer Sales Act ("DCSA"), Indiana Code § 24-5-0.5-1 to -12, are to:

(1) simplify, clarify, and modernize the law governing deceptive and unconscionable consumer sales practices;

(2) protect consumers from suppliers who commit deceptive and unconscionable consumer sales practices; and

(3) encourage the development of fair consumer sales practice.

Ind. Code § 24-5-0.5-1(b).

87.     The General Assembly has instructed courts to construe the DCSA liberally to promote these purposes and policies. Ind. Code § 24-5-0.5-1(a).

88.     Defendant is a "supplier" as defined in the DCSA because it is a seller or other person who regularly engages in or solicits consumer transactions, which are defined to include sales of personal property, services, and intangibles that are primarily for a personal, familial, or household purpose, such as those at issue in this action. Ind. Code § 24-5-0.5-2(1), (3).

89.    The DCSA provides that "[a] supplier may not commit an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction. Such an act, omission, or practice by a supplier is a violation of [the DCSA] whether it occurs before, during, or after the transaction. An act, omission, or practice prohibited by this section includes both implicit and explicit misrepresentations." Ind. Code § 24-5-0.5-3(a).

90.    The DCSA further provides:

Without limiting the scope of subsection (a) the following acts, and the following representations as to the subject matter of a consumer transaction, made orally, in writing, or by electronic communication, by a supplier, are deceptive acts:

(1) That such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have.

(2) That such subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not. . . .

Ind. Code § 24-5-0.5-3.

91.    Defendant committed deceptive acts, including but not limited to:

a.    Representing that its account deposit, checking, ATM, and debit card services had performance, characteristics, uses, or benefits they did not have and which Defendant knew or should reasonably have known they do not have; and

b.    Representing that its account deposit, checking, ATM, and debit card services were of a particular standard, quality, grade, style, or model, when they were not and when Defendant knew or should reasonably have known that they were not.

92.    Defendant's violations were willful and were done as part of a scheme, artifice, or device with intent to defraud or mislead, and therefore are incurable deceptive acts under the DCSA.

93.    The DCSA provides that "[a] person relying upon an uncured or incurable deceptive act may bring an action for the damages actually suffered as a consumer as a result of the deceptive act or five hundred dollars ($500), whichever is greater. The court may increase

damages for a willful deceptive act in an amount that does not exceed the greater of: (i) three (3) times the actual damages of the consumer suffering the loss; or (ii) one thousand dollars ($1,000). Ind. Code § 24-5-0.5-4(a).

94.     The DCSA provides that "[a]ny person who is entitled to bring an action under subsection (a) on the person's own behalf against a supplier for damages for a deceptive act may bring a class action against such supplier on behalf of any class of persons of which that person is a member . . . ." Ind. Code § 24-5-0.5-4(b).

95.     Had Plaintiffs and members of the Class been aware that they were going to be charged multiple fees on an item in the manner Defendant assessed them, Plaintiffs and members of the Class would not have entered into such transactions and would not have incurred the additional fees.

96.     As a direct and proximate result of Defendant's unfair and deceptive acts and practices in violation of the DCSA, Plaintiffs and members of the Class have incurred more fees than they should have and have suffered monetary damages for which Defendant is liable.

97.     Plaintiffs and members of the Class seek actual damages plus interest on damages at the legal rate, as well as all other just and proper relief afforded by the DCSA. As redress for Defendant's repeated and ongoing violations, Plaintiffs and members of the Class are entitled to, *inter alia*, actual damages, treble damages, attorneys' fees, and injunctive relief.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Class, respectfully requests that the Court:

        a.   Certify this case as a class action, designating Plaintiffs as the Class Representatives and designating the undersigned as Class Counsel;

b.   Award Plaintiffs and the Class actual damages in an amount to be proven at trial;

c.   Award Plaintiffs and the Class restitution in an amount to be proven at trial;

d.   Award Plaintiffs and the Class statutory damages under the DCSA;

e.   Award Plaintiffs and the Class pre- and post-judgment interest in the amount permitted by law;

f.   Award Plaintiffs and the Class attorneys' fees and costs as permitted by law;

g.   Grant Plaintiffs and the Class a trial by jury;

h.   Enjoin Defendant from breaching the Contract and declare the practices outlined herein to be unlawful in light of Defendant's contractual promises;

i.   Grant leave to amend these pleadings to conform to evidence produced at trial; and

j.   Grant such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs, by counsel, demand trial by jury.

Respectfully submitted,

/s/*Lynn A. Toops*
Lynn A. Toops
Lisa M. La Fornara
COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
T: (317) 636-6481
ltoops@cohenandmalad.com
llafornara@cohenandmalad.com

J. Gerard Stranch, IV*
BRANSTETTER, STRANCH
& JENNINGS, PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
T: (615) 254-8801

F: (615) 255-5419
gerards@bsjfirm.com

Christopher D. Jennings*
JOHNSON FIRM
610 President Clinton Avenue, Suite 300
Little Rock, Arkansas 72201
Phone: (501) 372-1300
Fax: (888) 505-0909
chris@yourattorney.com

* To seek admission *pro hac vice*

 ***Counsel for Plaintiffs and the Proposed Plaintiff Class***