UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

MIRANDA P. EDMONDSON,          )
JOSHUA A. EDMONDSON,           )
                               )
              Plaintiffs,      )
                               )
        v.                     )    No. 1:22-cv-01745-JPH-KMB
                               )
GERMAN AMERICAN BANK,          )
                               )
              Defendant.       )

**ORDER GRANTING MOTION TO STAY PENDING ARBITRATION**

Plaintiffs Miranda and Joshua Edmondson allege that their bank improperly charged multiple overdraft and insufficient funds fees.  Dkt. 35.  Defendant has filed a motion to stay this case pending arbitration, arguing that the Edmondsons' claims are subject to a binding arbitration agreement.  For the reasons below, that motion is **GRANTED**.  Dkt. [63].

**I.**
**Facts and Background**

"In deciding whether the party opposing . . . compelled arbitration . . . has identified a genuine issue of material fact for trial, 'the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor.'"  *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002).

In April 2020, the Edmondsons opened an account with Citizens Union Bank of Shelbyville ("CUB").  Dkt. 63-1 at 2 ¶ 6 (Wise Decl.); dkt. 35-3 (CUB Agreement).  Almost two years later, German American Bank ("GAB") acquired CUB.  *Id.* at 2 ¶ 4.  GAB then mailed a letter to CUB accountholders, including

1

the Edmondsons, informing them that CUB would soon become GAB and that their accounts would then be subject to GAB's Account Agreement.  Dkt. 63-2 at 4 (Welcome Letter).

The Welcome Letter refers to documents that were included with it:

> To help you get to know us, enclosed you will find the following:
>
> - **Welcome Booklet:**
>   Learn how your Citizens Union Bank accounts will smoothly transition to German American Bank for both personal and business banking customers. You will also find more information about German American Bank, along with key conversion dates.
>
> - **Deposit Account Agreement and Disclosures**
>   Read the details of your German American Bank account(s), agreements and disclosures.

*Id.*  The Deposit Account Agreement and Disclosures ("GAB Account Agreement") contained 39 pages of information for accountholders, including a title page titled, "Your Deposit Account" with several subjects listed:

> Terms and Conditions;
> Dispute Resolution;
> Understanding and Avoiding Overdraft and NSF Fees;
> Electronic Transfers;
> Your Ability to Withdraw Electronic Funds;
> Truth in Savings;
> Substitute Checks

Dkt. 63-2 at 21.  Under "Terms and Conditions," the GAB Account Agreement informed customers that "If you sign the signature card or open or continue to use the account, you agree to these rules."  *Id.* at 22.

Later in the GAB Account Agreement, the first entry in bold under the heading "DISPUTE RESOLUTION," is "**Mandatory Binding Arbitration.**"  *Id.* at

26.  That section explains that "any dispute relating in any way to your Account, this Agreement or transactions related thereto ("Claims") will be resolved by binding arbitration as discussed below, and not through litigation in any court."  *Id.*  "Claims" are defined to "include, but are not limited to" those "that arose before the effective date of this Agreement or any prior deposit account agreement (including, but not limited to, claims related to advertising, promotions, or disclosures)."  *Id.*  The same page includes, in all caps, that "YOU HAVE A RIGHT TO OPT OUT OF THIS AGREEMENT TO ARBITRATE."  *Id.* The Edmondsons did not opt out.  Dkt. 63-3 ¶ 9 (Parr Decl.).

After receiving the Welcome Letter and GAB Account Agreement, Ms. Edmondson signed up for online banking with GAB.  Dkt. 63-4 at 3 ¶¶ 11–12. To do so, she checked a box that she had "read and accepted the Terms & Conditions of service."  *Id.*  The Terms and Conditions were GAB's Online Banking Agreement, which included that "you and the Bank agree to be bound by and comply with the requirements . . . of the Account Agreement."  *Id.* at 2–3, 11.  The Edmondsons also received GAB account benefits including a complimentary VISA check card, online and mobile banking and bill pay, electronic statements, mobile deposits and telephone banking, free ATM withdrawals in GAB's network, no minimum required checking account balance, and no monthly checking account maintenance fee.  Dkt. 63-2 at 3 ¶ 9 (Kasten Decl.).  Ms. Edmondson also requested and accepted a GAB debit card that she picked up at a GAB branch.  Dkt. 63-4 at 3 ¶ 13 (Reisinger Decl.).

The Edmondsons brought this case against GAB (as CUB's successor) alleging that they had been charged multiple insufficient fund fees and overdraft fees "[p]rior to November 2021."  Dkt. 35 at 2–5.  GAB moved to dismiss or in the alternative to stay this case pending arbitration.  Dkt. 63.

## II.
## Federal Arbitration Act Standard

"When deciding whether the parties agreed to arbitrate a certain matter, courts generally should apply ordinary state-law principles that govern the formation of contracts." *Druco Restaurants, Inc. v. Steak N Shake Enters., Inc.*, 765 F.3d 776, 781 (7th Cir. 2014).  Once the existence of an arbitration agreement has been established, the party moving to compel arbitration must show "a dispute within the scope of the arbitration agreement." *Id.*  "[T]he FAA's policy in favor of arbitration applies when determining the scope of an agreement to arbitrate." *Id.*  If the arbitration clause applies, the case must be stayed pending arbitration. *Smith v. Spizzirri*, 601 U.S. 472, 474 (2024);[1] 9 U.S.C. § 3.

## III.
## Analysis

GAB argues that the GAB Account Agreement's mandatory arbitration provision applies to Edmondsons' claims, so they must be arbitrated.  Dkt. 64.  In response, the Edmondsons argue that they did not accept the GAB Account Agreement and that regardless their claims here fall outside its scope.  Dkt. 65.

---

[1] Because *Smith* requires a stay instead of dismissal if the arbitration clause applies, the Court construes GAB's motion as only a motion to stay.  Dkt. 16.

Since the parties rely on Indiana law, dkts. 64 at 9–19; dkt. 65 at 9–20, the Court applies Indiana law. *See Bancorpsouth, Inc. v. Fed. Ins. Co.*, 873 F.3d 582, 586 (7th Cir. 2017) ("A federal court sitting in diversity must attempt to resolve issues in the same manner as would the highest court of the state that provides the applicable law."); *Druco Restaurants, Inc.*, 765 F.3d at 781 (applying Indiana law when parties agree that it applies to their contracts).

## A. **Acceptance**

GAB argues that the Edmondsons affirmatively accepted the GAB Account Agreement. Dkt. 64 at 12–15. The Edmondsons respond that they did not agree because GAB did not provide them with reasonable notice of the GAB Account Agreement and there's insufficient evidence to infer that they agreed to it. Dkt. 65 at 14–20.

### 1. **Reasonable Notice**

Under Indiana law, unless the parties to a contract agree otherwise, a contract offer must come with reasonable notice before it can be considered accepted. *See Land v. IU Credit Union*, 218 N.E.3d 1282, 1287 (Ind. 2023). Reasonable notice is "for the courts to decide as a matter of law." *Id.*

In *Land*, the Indiana Supreme Court addressed the reasonableness of a credit union's notice of its offer to amend the terms of the account agreement with an arbitration "Addendum" that was sent by regular mail in the customer's periodic account statement. *Id.* at 1288–89. The Court held that the notice was reasonable because it was not sent "along with copious piles of junk mail" or "buried," but was included in the customer's two-page account

statement  *Id.* at 1289.  The first page "clearly referenced the Addendum" and the second page "was the Addendum itself."  *Id.*  So if "Land simply glanced at the account statement, she would have easily seen the reference to the Addendum and the language directing her to 'review the added language."  *Id.*

Here, like the credit union in *Land*, GAB sent the Edmondsons' notice by regular U.S. mail with a Welcome Letter clearly setting forth that CUB would become GAB and that the customer's account was subject to GAB's Account Agreement.  Dkt. 63-2 at 4.  The attached 15-page Welcome Packet contained information for soon-to-be GAB accountholders.  *Id.* at 5–19.  And the 39-page GAB Account Agreement had a cover page with the following subjects listed:

> Terms and Conditions;
> Dispute Resolution;
> Understanding and Avoiding Overdraft and NSF Fees
> Electronic Transfers
> Your Ability to Withdraw Electronic Funds
> Truth in Savings
> Substitute Checks

Dkt. 63-2 at 21.  The Dispute Resolution section contained a "**Mandatory Binding Arbitration**" provision, and that "YOU HAVE A RIGHT TO OPT OUT OF THIS AGREEMENT TO ARBITRATE."  *Id.* at 26.

Under *Land*, that notice is reasonable.  While GAB's notice was substantially longer than the two-page Addendum in *Land*, that difference is consistent with the substantial information a bank must send when offering a new Account Agreement with all new terms after a merger.  Moreover, none of the materials were junk mail or superfluous information, which is like *Land*, 218 N.E.3d at 1289, and distinguishes *Kortum-Managhan v. Herbergers NBGL*,

6

which the Edmondsons cite, 204 P.3d 693, 696 (Mont. 2009).  Finally, as in *Land*, it would be clear from "simply glanc[ing]" at the first page of GAB's materials that GAB was offering and explaining a new account agreement and that all the materials should be carefully reviewed.  *Land*, 218 N.E.3d at 1289.

Therefore, given the context and the volume of information that GAB needed to convey to CUB accountholders, GAB's notice to the Edmondsons was reasonable.

### 2. The Edmondsons' Acceptance

GAB argues that the Edmondsons accepted the terms of the GAB Account Agreement by agreeing "to the conversion of their old CUB account into a new GAB account" and by continuing to use that GAB account and its benefits.  Dkt. 64 at 12.  The Edmondsons respond that their use of the GAB account does not show acceptance of the GAB Account Agreement under Indiana precedent.  Dkt. 65 at 14–20.

Under Indiana law, assent to a contract "may be expressed by acts which manifest acceptance."  *DiMizio v. Romo*, 756 N.E.2d 1018, 1022 (Ind. Ct. App. 2001); *Decker v. Star Fin. Grp., Inc.*, 204 N.E.3d 918, 924 (Ind. 2023) (Goff, J. concurring).  So "the parties' performance under an agreement will amount to an unambiguous and overt admission by both parties that a contract existed." *Abercrombie & Fitch Stores, Inc. v. Simon Prop. Group*, 160 N.E.3d 1103, 1109 (Ind. Ct. App. 2020).  Similarly, a party accepts a contract by silence when it "takes the benefit of offered services with reasonable opportunity to reject them and reason to know that they were offered with the expectation of

compensation." *Land I,* 218 N.E.3d at 1290 (quoting and adopting the Restatement (Second) of Contracts § 69(1)).

Here, GAB mailed the Welcome Letter, Booklet, and GAB Account Agreement in February 2022, after its merger with CUB.  Dkt. 63-2 at 3 ¶ 8. Those materials explained that the Edmondsons could accept the terms of the GAB Account by signing the signature card or using the account, dkt. 63-2 at 22, and that's exactly what the Edmondsons did, dkt. 64 at 5–8.  Then, the Edmondsons used their GAB account and accepted the benefits that GAB provided to its accountholders, including a complimentary VISA check card, online and mobile banking and bill pay, electronic statements, mobile deposits and telephone banking, free ATM withdrawals in GAB's network, no minimum required checking account balance, and no monthly checking account maintenance fee.  Dkt. 64 at 5–6.  The Edmondsons also registered for joint online banking with GAB, and Ms. Edmondson requested and accepted a GAB debit card that she picked up at a GAB bank in Indiana.  *Id.* at 7–8.

The Edmondsons therefore accepted the GAB Account Agreement by doing exactly what that Agreement contemplated they do.  *See Abercrombie & Fitch Stores*, 160 N.E.3d at 1110 (parties' actions showed intent to be bound when the store remained open and paid decreased rent amounts and the mall accepted those payment); *DiMizio*, 756 N.E.2d at 1022; *accord Domer v. Menard*, --- F.4th ----, 2024 WL 4022955 at *8–9 (7th Cir. Sept. 3, 2024) (completion of an online order "demonstrated Domer's unambiguous manifestation of assent to the arbitration agreement" under Wisconsin law).

The Edmondsons nevertheless argue that their actions were not acceptance under the Indiana Supreme Court's decision in *Land I*, 218 N.E.3d 1282. Dkt. 65 at 14–18. *Land I*, however, is too different to control here. First, Ms. Land claimed that she was unaware of the addendum while here it's undisputed that the Edmondsons received the Welcome Letter and were aware of the GAB Account Agreement. *See Land I*, 218 N.E.3d at 1290. Second, Ms. Land was already a member of IU Credit Union when it sent her the addendum that claimed to change the terms of their agreement. That's a central distinction since the addendum in *Land I* was limited to arbitration and therefore had no effect on Ms. Land's use of the account. Similarly, the *Land I* addendum was unconnected to any "course of dealing" between the parties that would support acceptance by silence. *Id.* at 1291. Here, by contrast, a bank merger led to GAB offering the Edmondsons a broad Account Agreement with reasonable notice that it would govern their entire banking relationship. And that GAB Account Agreement explained that the Edmondsons would accept its terms by signing the signature card or using the account. Dkt. 63-2 at 22. Nothing in *Land I* suggests that a banking customer could fully use an account in these circumstances—as the Edmondsons did—without manifesting assent to the GAB Account Agreement. *See Land I*, 218 N.E.3d at 1290–91.

In sum, the Edmondsons accepted the GAB Account Agreement by using the services provided by their new GAB account pursuant to the Agreement.[2]

---

[2] Because the Edmondsons accepted the GAB Account Agreement even without considering their acceptance of GAB's Terms & Conditions of its Online Banking

Therefore, the GAB Account Agreement, including its binding arbitration provision, is binding on the Edmondsons.

### C.   Scope of the Arbitration Clause

If an "arbitration clause is broad enough, by its own terms, to encompass disputes," then arbitration of those disputes is required.  *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 662 (7th Cir. 2002).  Here, GAB argues that the Edmondsons' claims about overdraft and insufficient funds fees must be arbitrated because they are within the scope of the GAB Account Agreement's mandatory arbitration provision.  Dkt. 64 at 20.  The Edmondsons respond that their claims are outside the scope of the arbitration provision because they are based on fees that were assessed under their CUB account rather than their GAB account.  Dkt. 65 at 9–12.

The GAB Account Agreement commits to mandatory arbitration "any dispute relating in any way to your Account, this Agreement or transactions related thereto ('Claims')."  Dkt. 63-2 at 26.  "Claims" are defined to "include, but are not limited to," those "that arose before the effective date of this Agreement or any prior deposit account agreement (including, but not limited to, claims related to advertising, promotions, or disclosures)."  *Id.*

The Seventh Circuit has explained that the language "arising out of or relating to" in an arbitration provision is "extremely broad and capable of an expansive reach."  *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1034 (7th Cir.

---

Agreement, the Court does not address the parties' arguments regarding the Online Banking Agreement and its incorporation of the Account Agreement.

2012) (quoting *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999)).  Moreover, the GAB arbitration provision explicitly states that the "agreement to arbitrate" should be "broadly interpreted." Dkt. 63-2 at 26–27.  The broad arbitration clause here therefore "necessarily creates a presumption of arbitrability, which requires that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration" as a matter of federal law.  *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1034 (7th Cir. 2012); *see Domer*, --- F.4th at ----, 2024 WL 4022955 at *9.

Despite that broad language and strong presumption of arbitrability, the Edmondsons argue that their claims are outside the scope of the arbitration provision because they involve fees incurred on their CUB account before GAB acquired CUB.  Dkt. 65 at 10–11.  The arbitration clause, however, does not limit its scope to only claims existing after GAB acquired CUB or after the GAB Account Agreement was accepted.  *See* dkt. 63-2 at 26.  And "Courts may not imply limitations or engraft additional terms that the parties did not include in their agreement." *See Domer*, --- F.4th at ----, 2024 WL 4022955 at *9.[3]  For that reason, the Seventh Circuit recently declined to "adopt a bright-line rule that claims [arising before the formation of the agreement] are categorically beyond the scope of even the most broadly worded arbitration clause." *Id.*  Instead, the same rule applies to all cases regardless of when the claims arose—those claims must be arbitrated "when they fall 'within the scope of the

---

[3] While *Domer* was decided after briefing on this issue was complete, it applied and is consistent with Supreme Court and Seventh Circuit precedent on the scope of arbitration clauses.  *See Domer*, --- F.4th at ----, 2024 WL 4022955 at *9–11.

agreement' to arbitrate." *Id.* (quoting *Rock Hemp Corp. v. Dunn*, 51 F.4th 693, 702 (7th Cir. 2022)).

Even more, the arbitration provision here is not silent on claims arising prior to the GAB Account Agreement.  First, it does not limit arbitration to claims arising under or relating to the Account Agreement—which would be "extremely broad" in its own right.  *Gore*, 666 F.3d at 1033.  It also includes "any dispute relating in any way to your Account . . . or transactions related thereto."  Dkt. 63-2 at 26.  Further, that expressly includes claims "that arose *prior to the effective date of the Agreement* or *any prior deposit account agreement*."  Dkt. 63-2 at 26 (emphases added).  The text of the arbitration provision therefore supports its application here.  *See Gore*, 666 F.3d at 1034 (requiring arbitration of a prior breach-of-contract claim against a successor in interest when the claim "relate[d] only tangentially" to the Agreement that required arbitration).

The Indiana cases that the Edmondsons cite do not show otherwise because the arbitration provisions in those cases did not contain language that expressly included prior agreements or claims within the arbitration provision's scope.  Dkt. 65 at 9–14 (relying on *Mislenkov v. Accurate Metal Detinning, Inc.*, 743 N.E.2d 286, 290 (Ind. Ct. App. 2001); *Norwood Promotional Products, Inc. v. Roller*, 867 N.E.2d 619, 625 (Ind. Ct. App. 2007)).  Moreover, "any doubt concerning the scope of the arbitration clause is resolved in favor of arbitration *as a matter of federal law*."  *Domer*, --- F.4th at ----, 2024 WL 4022955 at *9 (emphasis added) (quoting *Gore*, 666 F.3d at 1032).  So the Edmondsons'

12

"temporal argument" under Indiana precedent does not distinguish this case from the Supreme Court and Seventh Circuit decisions compelling arbitration even when "the conduct had occurred before formation of the arbitration agreement." *Id.* at *11 (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 398–406 (1967); *Gore*, 666 F.3d at 1036).

The Edmondsons' claims therefore fall within the scope of the GAB Account Agreement's mandatory arbitration provision.[4]

## IV.
## Conclusion

GAB's motion to stay pending arbitration is **GRANTED**.  Dkt. [63].  This action is stayed pending arbitration. *Smith*, 601 U.S. at 474.  The parties **SHALL FILE a status update by December 2, 2024,** on the status of arbitration.

**SO ORDERED.**

Date: 9/9/2024

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel

---

[4] Since the GAB Account Agreement contains a binding arbitration clause that applies to this dispute, the Court does not consider the arguments made by the parties regarding the CUB agreement.